## Borlin et al. *versus* Commonwealth.

1. Where a record shows a writ of execution to which there is attached a notice by the landlord of the defendant in the execution claiming arrears of rent out of the proceeds of sale, a presumption arises that said notice was duly served upon the sheriff before he returned the writ.

2. By section 85 of the Act of June 16th, 1836 (P. L., 777), a sheriff who returns an execution stayed, after a levy on personal property, and notice of a claim of rent from the landlord of the defendant, does so at his own risk, unless he has the consent of the landlord in writing.

October 7th, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Westmoreland county*: Of October and November Term 1885, No. 55.

This was, in the court below, a *scire facias sur* sheriff's recognizance by the Commonwealth, at the instance of John Gilmore, against James Borlin, late sheriff of Westmoreland county, and his sureties, to recover damages resulting from the action of the said sheriff in staying certain writs of execution without plaintiff's consent and after he had notice from plaintiff of a claim for rent out of the money that might be realized from the sale of the personal property upon these writs.

On the trial, before Hunter, P. J., the following facts appeared: On May 12th, 1879, H. F. Ludwick issued an alias *fi. fa.* against John F. Thomas for the sum of $1,050 and costs recovered upon a judgment in the Court of Common Pleas of Westmoreland county, returnable to the fourth Monday of August and placed the same in the hands of James Borlin, who was then sheriff of said county. To this writ Borlin made return as follows:

"August 5th, 1879. I did levy on the within described personal property of John F. Thomas, which property still remains in my hands unsold for want of buyers, so answers.

"James Borlin, Sheriff."

Then follows a list of the articles levied upon, consisting of stock, crops and farming instruments.

On May 22d, 1879, another writ of *fi. fa.* was issued out of the same court in the suit of Hazlett and Williams against John F. Thomas, the same defendant; this was also returnable to the fourth Monday of August next and was delivered to the sheriff, to which writ he made return as follows: "August 5th, 1879. Same return as at No. 5 (being the suit of Ludwick *v.* Thomas, as above), August Term 1879."

Attached to one of these writs was the following paper:

[Borlin *v.* Com'th.]

" Hazlett & Williams, Fi. Fa.,　　　　August Term, 1879.
　　　vs.
　　John F. Thomas.
To James Borlin, Sheriff.
　· "You have executions in your hands in favor of Hazlett & Williams against John F. Thomas, and you have made a levy upon the personal property of said John F. Thomas, now take notice that I, John Gilmore, as landlord, claim to receive out of the proceeds of the sale of said personal property rent not exceeding that of one year, namely six hundred dollars, which was due and in arrear before your said levy, of all which you will take notice.　　　　　　　　　　JOHN GILMORE.
　" Greensburg, Pa., September 2d, 1879."
　On September 8th, 1879, a *vend. ex.* in the suit of Hazlett and Williams against Thomas was issued and placed in the hands of the sheriff, to which he made return as follows: "November 10th, 1879. Stayed by order of the plaintiff." On September 8th, 1879, a *vend. ex.* was also issued in the suit of Ludwick against Thomas, to which the sheriff made the following return: "November 10th, 1879. After $220 paid to plaintiff, the writ was stayed by order of plaintiff."
　The evidence on behalf of the plaintiff was direct and undisputed that Thomas was the tenant of John Gilmore; that the arrears of rent claimed, not exceeding one year, were due and unpaid and that the property levied upon was of sufficient value to pay the same. There was no testimony to show when, or by whom, the notice of Gilmore's claim was attached to the return. Neither did the return itself make any mention of the paper.
　The defendants asked the court to charge " that there can be no recovery in this action, for the reason that the writs as returned show that they were returned into the prothonotary's office on the 5th day of August, 1879; that the return day for the August court of 1879 was August 25th, 1879; that on that day the writs were dead in the sheriff's hands, if they were there at all; that there is no evidence showing that the notice of 2d September, 1879, was ever delivered to sheriff Borlin or any of his deputies, and for these reasons the plaintiff cannot recover." Answer. " Refused."
　The court reserved, as a question of law, "whether or not the notice came in time, and whether or not the plaintiff would be entitled to recover from the showing of the record," and instructed the jury *pro forma* to find for the plaintiff the amount that is demanded, subject to the above question of law.
　Verdict accordingly for the plaintiff for $689.50, subject as aforesaid. Subsequently, on motion, the court entered judg-

ment on the verdict on the question reserved. Defendant then took this writ, assigning for error the action of the court in not submitting to the jury and not permitting them to find the fact whether or not a notice by Gilmore, the landlord, had been served on the sheriff or his deputies, and in entering judgment for the plaintiff on the verdict on the reserved question.

*Williams* (*J. J. Hazlett, Jacob Turney* and *Silas A. Kline* with him), for plaintiffs in error.—In order to make the sheriff and his sureties liable, there must be actual proof of notice of the landlord's claim; such notice will not be presumed: Winchester *v.* Bennett, 4 P. F. S., 510; Miller *v.* Hershey, 9 Id., 64; Robinson *v.* Myers, 17 Id., 9. The landlord was not injured by the stay, for he could then have distrained for his rent, hence he cannot now have his action on the recognizance: Commonwealth *v.* McCoy, 8 Watts, 154.

Process is under the control of the party issuing it: Shryock *v.* Jones, 10 Harris, 307. An execution may at any time be countermanded by the attorney or party who caused it to issue, and the officer is bound to obey such instructions and suspend proceedings upon the writ whenever he is instructed to do so: Herman on Executions, p. 210. When an officer acts in obedience to the orders, agreements and directions of execution creditor, or plaintiff, so that he has no control over property levied on, or of the proceedings, the officer then becomes the agent of the plaintiff and his liability ceases: Herman on Executions, p. 639; Dorrance *v.* Commonwealth, 1 Harris, 163.

The sheriff is but a ministerial officer, with no judicial powers, and cannot prevent the plaintiff from staying his execution if he chooses to do so; but if he does stay it the sheriff is released and the plaintiff takes the responsibility: Milliken *v.* Brown, 10 S. & R., 188; Allison *v.* Rheam, 3 S. & R., 139.

*Head* (*James S. Moorhead* with him), for defendant in error. —The record was sufficient evidence that the sheriff had notice of the landlord's claim. It showed two writs of *fi. fa.*, returnable 25th August, 1879, bearing a return dated 5th August, 1879, with levies on a very large amount of personal property. These levies were attached by a separate paper to the writs; and attached to one of these writs, underneath, and therefore prior to the levy, was the notice of the landlord, dated 2d September, 1879.

This was competent testimony to show that the notice reached the sheriff before his writ was *actually returned* into the office of the prothonotary.

[Borlin v. Com'th.]

It was from this evident that the date in the return, to wit, 5th August, 1879, was the date of the levy, not the date the writ was returned to the office. Indeed, the return states this fact: "Aug. 5th, 1879, I did levy," etc.

There is no conclusive presumption of law that a sheriff always returns his writ on or before the return day. Prior to the Act of 2d July, 1845, real estate was frequently sold long after the return day of the writ, and such sales were recognized as valid by this court: Kelly v. Creen, 3 P. F. Smith, 302.

That Act only applied to real estate, and we believe the practice is almost universal to sell personal property after the return day: Eberle v. Mayer, 1 Rawle, 366; Com'th v. Stremback, 3 Id., 341; McClure v. Ege, 7 Watts, 74; Earl's Appeal, 1 Harris, 483.

The 85th section of the Act of 16th June, 1836, provides that "whenever any goods and chattels liable to the payment of rent as aforesaid shall be seized in execution, *the proceedings upon such execution shall not be stayed by the plaintiff therein*, without the consent of the person entitled to such rent, in writing, first had and obtained."

It has been decided in many cases, beginning, perhaps, with Greider's Appeal, 5 Barr, 422, that the provisions of 83d, 84th and 85th sections of this Act were intended to make amends to the landlord for taking away his power of distress by a judicial sale of the tenant's goods. In other words, that the notice required by the Act and the decisions thereunder amount practically to a warrant of distress.

When, therefore, the sheriff receives such notice he is entrusted, as such officer, with the goods of the tenant for the benefit of his landlord, and the execution process, being substituted for the distress, becomes *pro hac vice* the writ of the landlord as well as of the execution creditor, for the purpose of effecting a sale.

Hence, the writ shall not be stayed, "without the consent of the landlord," and it becomes the duty of the sheriff to execute the writ, unless relieved both by the plaintiff and the landlord.

Mr. Justice PAXSON delivered the opinion of the court October 19th, 1885.

Complaint is made in the first specification of error that the learned judge did not submit to the jury the question whether Gilmore, the landlord, had served a notice of his claim for rent upon the sheriff or his deputies.

As all the evidence in regard to the notice appears of record, it was not error in the court to pass upon its sufficiency. The court deemed it sufficient and gave a binding instruction. If

there was *prima facie* evidence upon the record of the notice the instruction was right, as no evidence of any kind was offered by the defendant.

The record evidence consisted of the sheriff's return to the writ of *fieri facias* and the paper attached to said writ. The return sets out a levy on August 5th, 1879, on the personal property of John F. Thomas, and that the same property remained in his (the sheriff's) hands unsold for want of buyers, with a schedule thereof. ·

It does not appear when this return was made. Attached to the writ was a notice from Gilmore, the landlord, to the sheriff, that he claimed one year's rent, six hundred dollars, out of the proceeds of the sale of the personal property. The notice is dated Sept. 2d, 1879. There was no oral testimony to show when or by whom the notice was attached, to the return, and the return itself makes no mention of the paper. What is the presumption arising from the face of the papers? Is it that the notice was duly served on the sheriff or his deputy?

We think it makes out a *prima facie* case of notice. Of course there is a possibility of the notice having been attached to the writ surreptitiously by some one other than the sheriff. But this is a matter of defence on the part of the sheriff. The law makes no such presumption. The paper is addressed to the sheriff, and is attached to his return. This is sufficient evidence, in the absence of all opposing proof, to show the receipt of the notice by the sheriff.

The second assignment alleges that the court erred in entering judgment for the plaintiff on the verdict on the reserved question. The reserved question was whether, under the facts as presented by the record, there can be any recovery. We see no error in the ruling upon this point. The record shows the receipt of the notice before the return of the writ. The precise time of the return is not therefore of much importance. In the absence of all proof there is no presumption that it was returned before the return day, which it was conceded was on the 25th of August. The record also shows that a *venditioni exponas* was subsequently issued to sell the property levied upon under the *fieri facias*, and the following return to said writ: " November 10th, 1879. After $220 paid to plaintiff the writ was stayed by order of the plaintiff." It thus appears the sheriff paid no attention to the landlord's claim, but collected a portion of the money, paid it over to the plaintiff in the execution and returned the writ stayed. Whether this was the result of ignorance or design is not material, as the effect upon the rights of the landlord is the same. The sheriff had notice of the landlord's claim and he disregarded it at his

peril. It makes but little difference when it was given. Any time before the return of the *vend. ex.*, and the payment of the money over to the execution creditor would have been sufficient. There was no time when the property was not bound by the lien of the levy after the levy had been made. The *venditioni exponas* was but a continuation of the *fieri facias*. The sheriff knew that the landlord claimed his rent out of the proceeds of the sale of the property levied upon, and that is enough to fix his liability.

Since the passage of the Act of 16th June, 1836—see section 85, P. L., 777—a sheriff who returns an execution stayed, after a levy on personal property, and notice of a claim of rent from the landlord of the defendant in such execution, does so at his own risk, unless he has the consent in writing of the landlord. The act prohibits the plaintiff from staying a writ under such circumstances without such consent. This is the compensation which the law gives the landlord whose right of distress is interfered with by the levy.

Judgment affirmed.

MERCUR, C. J., STERRETT and CLARK, JJ., dissented.