# William P. Moyer's Appeal.

1. When one person performs labor for another, the law ordinarily implies a contract of hiring and a promise to pay the price. Near relationship of the parties by consanguinity tends strongly to rebut that presumption. In the absence of any family relation, mere consanguinity of itself, as between grandfather and grandson, is insufficient for that purpose. The intention of the parties must be gathered from all the facts and circumstances of the case.

2. A grandson, without any evidence of a contract of hiring, cannot recover compensation from the estate of his deceased grandfather for services rendered to his aged grandfather and grandmother by sleeping in their home and caring for their wants at night.

March 4th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the decree of the Orphans' Court of *Berks County :* Of January Term, 1886, No. 295.

Appeal by William P. Moyer, one of the children and legatees named in the last will and testament of Amos Moyer, deceased, and a distributee in said decedent's estate, from the definitive decree of the Orphans' Court of Berks County, allowing and distributing to Henry W. Seitzinger, a claimant, as creditor against said decedent's estate, for services rendered to decedent and his wife, during decedent's lifetime, the sum of $225.00; and for witnesses' bill of costs to the said Henry W. Seitzinger, the sum of $10.00, the said decedent and his wife having been the grandparents of the said Henry W. Seitzinger.

The following is the adjudication and distribution of the Auditing Judge, SCHWARTZ, J., so far as relates to the claim of the appellee :

1. I. C. Becker, Esq., presented, as counsel for Henry W. Seitzinger, a claim of $687.00, for services rendered to decedent and his wife, during decedent's lifetime, continuously from January 1, 1880, to May 31, 1884. The claimant is a young man, unmarried, of about twenty-six years of age, and a grandson of the decedent. At the time said services were performed he lived with his parents in a house on the rear end of testator's lot. The deceased and his wife were respectively aged, in 1880, 85 and 75 years, and both somewhat enfeebled. They required considerable care and attention. Their children, all having families of their own, could not spare them the time necessary for their comfort, but, being deeply concerned for them and their happiness, they had consultations among themselves respecting the feasibility of employing some suitable person to take care of their aged parents. They came

eventually to the conclusion that they could themselves attend to their wants and needs during the day-time, and that Henry M. Seitzinger, their grandson, who resided with his parents on the same lot, should remain with them during the nights. In pursuance of this understanding, the young man slept at the residence of his grandparents from January 1, 1880, to May 31, 1884, the time at which decedent's death occurred, and attended to them. His services were no doubt often irksome and unpleasant, and, during some months immediately preceding the death of both of said grandparents, were no doubt very burdensome and onerous. But I can gather. nothing from the testimony, except that during a very great portion of the time he stayed with them he had but very little to do except to sleep in the house. It is, however, not to be denied but that young Seitzinger attended kindly and faithfully to the wants and needs of his grandparents. He should be compensated for these services if the policy of the law does not intervene. The law, as a rule on this subject, does not allow compensation or remuneration to children or grandchildren for services rendered to their parents or grandparents, unless the same were rendered as servants. Under all the evidence submitted, I find that the nursing and attendance were not rendered as grandchild, but as servant. Hence claimant is entitled to recover. The claim is, however, excessive. I cannot see that it ever interfered with his regular daily employment, hence cannot have been as onerous as represented. I will therefore allow him for said services rendered to his grandparents the sum of $225.00, and $10 bill of costs for his witnesses.

To this adjudication and distribution John E. Arthur, the executor of the last will and testament of the decedent filed exceptions. These were overruled, and the adjudication and distribution confirmed.

William P. Moyer, one of the heirs and legatees of the decedent, took this appeal, assigning for error the decree of the court confirming said adjudication. and distribution.

*William M. Goodman*, for appellant.—The duty between grandparents and grandchildren, as well as between parents and children to relieve and maintain, the one class the other, when their necessities require it, is made correlative by statute of June 13, 1836, section 28, and "this statute is in accordance with the moral sense of mankind:" Duffy *v.* Duffy, 8 Wr., 401.

The consultations among the testator's children respecting the feasibility of employing some suitable person to take care of the old folks, eventuating in an arrangement that they

would do so among themselves, "and that the claimant should do so during the nights," is conclusive that the creation of no debt was intended : Miller's Appeal, 4 Out., 571.

Where a family relationship exists, as between grandfather and grandson, and even more remotely, no implied promise to pay for service rendered in such relation between the parties arises—such services will be referred to the relationship : Neel *v.* Neel, 9 P. F. S., 347. So in Miller's Appeal, *supra*, it is said that " for services rendered by members of a family to each other no promise is implied for remuneration, because they were not performed in the expectation, by either party, that pecuniary compensation would be made or demanded."

*Israel C. Becker*, for appellee.—The finding of an auditing judge upon the facts should not be disturbed, unless for clear error. The reasons for this rule are substantial, and have been so often stated as to make their repetition or an enumeration of authorities unnecessary. His first report and adjudication, which bears every mark of care and impartiality, was, upon exception, reviewed and reconsidered by him, and his former opinion reaffirmed and readopted. In matters like this the judgment of the auditing judge must be accepted, like the verdict of a jury, and should not be disregarded, unless where the error is glaring : McConnell's Appeal, 1 Out., 31 ; Appeals of Bedel, *et al.*, 6 Norris, 510.

Mr. Justice CLARK delivered the opinion of the court, April 5th, 1886.

Henry M. Seitzinger, the claimant in this case, was the grandson of Amos Moyer, the decedent, whose estate is now for distribution ; his claim is for personal services rendered in the care and nursing of his grandfather and grandmother, who were old and much enfeebled in health. Seitzinger, it is admitted, was a young, unmarried man, whose daily employment was in the boiler shops of the railroad company ; he resided at home with his parents, but, from the 1st April, 1880, to 31st May, 1884, he slept in the house of his grandparents, and during the night-time gave them such attention as their condition required. During the greater part of this period he had but little to do, except to sleep in the house ; at times, the service he performed was doubtless unpleasant and burdensome, but it is admitted that he discharged his duty willingly and well.

It is objected, however, that his services were not rendered under any contractual relation with his grandfather, but were performed either through natural affection or a sense of duty to these near relatives, or perhaps at the instance of those who

were moved by considerations of this character. If his claim is recoverable at all, it must, of course, be upon the footing of a contract, express or implied. There is no evidence whatever of any previous request, on the part of the grandfather, in pursuance of which the services were performed, nor of any contract by him with his grandson in reference thereto, nor of any express promise upon his part to pay, and unless; under the special facts and circumstances of the case, a promise may be implied, the claimant is not entitled to participate in the fund.

When one person performs labor for another, the law ordinarily implies a contract of hiring and a promise to pay the price. The near relationship of these parties, by consanguinity however, tends strongly to rebut that presumption. In the absence of any family relation, the mere consanguinity of itself is perhaps insufficient for that purpose, but there are other facts and circumstances exhibited in the evidence, which, in view of their relation by blood, afford abundant, indeed irresistible, proof of their intention.

The learned judge of the Orphans' Court says: "It is perhaps true that no express contract in so many words existed;" it is equally true that the circumstances under which the services were admittedly performed, as stated by the learned judge, preclude the idea of any promise implied. In his first adjudication he states these circumstances as follows: "The deceased and his wife were respectively aged, in 1880, 85 and 75 years, and both somewhat enfeebled. They required considerable care and attention. Their children, all having families of their own, could not spare them the time necessary for their comfort, but, being deeply concerned for them and their happiness, they had consultations among themselves respecting the feasibility of employing some suitable person to take care of their aged parents. They came eventually to the conclusion that they could themselves attend to their wants and needs during the day-time, and that Henry M. Seitzinger, their grandson, who resided with his parents on the same lot, should remain with them during the nights. In pursuance of this understanding, the young man slept at the residence of his grandparents from January 1, 1880, to May 31, 1884, the time at which decedent's death occurred; and attended to them."

If the services were in fact rendered under an arrangement made by his sons and daughters, there is not the slightest proof of any authority on their part to make any such arrangement to bind him for the price; and as the father would have a right to suppose that, in thus providing for his wants, his children were actuated by motives of filial affection, no.

implication of a promise to pay could arise out of his acceptance of the services: Hertzog *v.* Hertzog, 5 Casey, 465; Horton's Appeal, 13 Norris, 62. If Seitzinger stood in the relation of servant to any one, he was the servant of those who employed him, and to them he must look for compensation.

We are of opinion that the Orphans' Court erred in allowing this claim.

> The decree is therefore reversed and the record is remitted, that distribution may be made in accordance with this opinion; and it is ordered that the appellee pay the costs of this appeal.