## Timmes, Appellant, v. Metz.

[Marked to be reported.]

*Landlord and tenant—Execution—Landlord's preference—Act of 1836.*

Under the act of June 13, 1836, P. L. 777, a landlord has a right of payment out of a fund raised by a sheriff's sale to an amount not exceeding one year's rent, and the fact that by mistake or accident he gives notice of a small sum in excess of the amount due at the time of the sale, does not destroy his right.

The plaintiff in an execution cannot demand that the landlord shall distrain upon goods upon the premises of the defendant, but not belonging to him, so that all of the goods on defendant's premises may be sold for the satisfaction of plaintiff's debt.

*Wages—Notice of claim—Acts of April 9, 1872, and June 13, 1883.*

Under the acts of April 9, 1872, P. L. 47, and June 13, 1883, P. L. 116, notice of a wages claim is sufficient which sets forth a levy upon all the goods and chattels of defendant, his business of hotel keeping, the character of the labor and services, the times when they were done or rendered, the amount due, and claims a lien upon the property in execution under the acts of assembly.

*Wages claim—Contract—Master and servant.*

A household servant who is employed upon the understanding that she is to be paid what her services are worth, is entitled to a preference for what her wages are worth out of a fund raised by a sheriff's sale of her employer's goods.

Argued May 22, 1893.   Appeal, No. 186, Jan. T., 1893, by plaintiff, Nicholas Timmes, from decree of C. P. Northumberland Co., May T., 1892, No. 16, dismissing exceptions to report of auditor distributing fund raised by sheriff's sale of property of defendant, Jesse G. Metz.   Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of auditor distributing proceeds of sheriff's sale.

From the report of the auditor, George B. Reimensnyder, Esq., it appeared that plaintiff issued an execution against defendant, and sold his property at sheriff's sale. Defendant was a hotel keeper in the borough of Shamokin. At the date of the sale he owed his landlord $1,195.83, under a lease providing for the payment of rent at the rate of $125 per month. After the levy, the landlord, W. M. Weaver, served upon the sheriff the following notice:

"To Robert Montgomery, high sheriff of the county of Northumberland.

"Sir: You are hereby notified and required to pay over to the undersigned the sum of twelve hundred and fifty dollars, out of the proceeds of the sale of the personal property of Jesse G. Metz, that being the amount of rent in arrears and due by him to me for the premises now in his occupancy, and upon which the said personal property was taken in execution. February 24, 1892.　　　　　　　　　W. M. WEAVER."

At the time the levy was made Alice Metz, wife of the defendant in the execution, owned personal property on the hotel premises, worth about $414; and Ellen B. Weaver, a sister of Mrs. Alice Metz, and a domestic in the family of Metz, who resided on the premises, owned personal property on the premises worth about $170.25; and Wm. M. Weaver, the landlord, owned a few articles which were on the premises; these articles, except such of them as were in the private part of the hotel, were all levied upon by the sheriff under the first levy, but notices of ownership of the respective articles by the respective owners were given to the sheriff on Feb. 24, 1892, the morning of the sale. The sheriff did not sell them. On Feb. 27, 1892, after the sale had been concluded, it having continued from the 24th to the 27th of February, 1892, a second levy was made by the sheriff upon the personal property of Mrs. Alice Metz and of Ellen B. Weaver, and this personal property remained upon the hotel premises until April 8, 1892, when they were removed by their respective owners.

On Feb. 24th Ellen B. Weaver served the following notice upon the sheriff:

"To Robert Montgomery, high sheriff of the county of Northumberland.

"Sir: You will please take notice that, whereas all the goods,

chattels, rights and credits which were of Jesse G. Metz, the above named defendant, are now under execution, by virtue of the above writ of fieri facias issued upon judgment obtained in the above court, in favor of the above named plaintiff and against the above defendant. And whereas there is now due and owing to me by the said Jesse Metz, the above named defendant, the sum of $121.29, that the said amount is due me for labor and services rendered as a domestic in the service of the above named defendant, while engaged in the business of keeping a hotel or tavern, in the borough of Shamokin, and county aforesaid, and in and about such business carried on by the said execution debtor.

" And whereas the time of rendering such services was within six months from the time fixed for the sale of said articles of personal property so under levy and execution, and the amount claimed by me for labor and services as aforesaid, being not exceeding the amount of $200. That the said amount of $121.29 is hereby claimed by me as a lien upon said property under execution, by virtue of an act of assembly commonly called the Wages Act, approved the 13th day of June, A. D. 1883, it being a supplement to an act of assembly entitled, An act for the better protection of the wages of miners, mechanics, laborers and others, approved the 9th day of April, 1872, and the supplements and amendments to the forgoing act. You will therefore allow the said amount. ELLEN B. WEAVER."

David Griffith filed a similar notice for $18.00 for services as a clerk.

The wages notices, as printed in the appellant's paper book, contained no caption or reference to the writ, by number, etc., but from the reference to the notices in the opinion of the court below, lines 17 and 18, page 389 below, the caption may have been similar to that in the notice which follows.

On March 10, 1892, the following notice was served upon the landlord:

" Nicholas Timmes v. Jesse G. Metz. In the court of common pleas cf Northumberland county. No. 242, December term, 1889. Fi. fa. No. 16, May term, 1892.

" To WM. M. WEAVER, ESQ.

" Sir: Upon the levy and before the sale of said defendant's goods, in and upon the premises of the National Hotel, in the

borough of Shamokin, in said county, upon above fi. fa. by Robert Montgomery, high sheriff of Northumberland county, you notified the said sheriff in writing, that the said defendant was indebted to you in the sum of $1,250, for rent accrued and unpaid by said defendant, for said premises as tenant under you, within one year immediately preceding said levy, and that the said sheriff should pay said amount of money over to you, in satisfaction of said claim for rent, out of the money made upon said fi. fa. You are hereby notified that there was at and before the time of said levy, and still is upon said premises of the defendant, the following goods and chattels liable to distress and sale, for nonpayment of rent for said premises, by the said defendant, to wit (here follows a list of the personal property on the premises). That said goods and chattels have been claimed by Alice M. Metz, and Miss Ellen Weaver, who are not parties defendant in said writ of fi. fa. No. 16. May term, 1892. You are hereby notified that unless you proceed and distrain said goods and chattels, and apply the proceeds thereof to the payment of your rent, now in and upon the said premises, the same being liable for the payment of the rent for said premises, by said defendant, I will hold you liable for the value of the same, and ask that the value thereof be deducted from the amount claimed by you for rent, from and out of the proceeds of the above fi. fa.

" Served this copy, Shamokin, March 10, 1892.

"NICHOLAS TIMMES, Plaintiff."

The auditor awarded to the landlard $1,195, the whole amount due, but refused to allow the claims to Ellen B. Weaver and David Griffiths on the ground that the notices were insufficient in law, in that they did not set out that the goods and chattels seized by virtue of the execution were " property in and about or used in carrying on the business in which the defendant was engaged, or in connection therewith," citing Allison v. Johnson, 92 Pa. 314; Pardee's Ap., 100 Pa. 408; Adamson's Ap., 100 Pa. 459; acts of April 9, 1872, P. L. 47, and June 13, 1883, P. L. 116.

Exceptions to the auditor's report were dismissed as to the landlord's claim and sustained as to the wages claims, and a decree was entered allowing them to participate in the distribution, in an opinion in part as follows, by IKELER, P. J.:

" The evidence in the case shows without a particle of doubt or a word of dispute that all of the goods, chattels and property sold and from which the entire fund for distribution arose, were all the property and estate that the defendant owned, and that they were all on the premises connected with and used and necessary in carrying on and conducting the business of keeping a hotel. Even had they not been shown to have been upon, used and necessary in the hotel premises and business of the defendant, as required in the first section of the act of 1872, and in amendments of 1883 and 1891, in a case of this kind where it is shown and admitted that the defendant had no other estate and property and was insolvent, the third section of the act of 1872 extends the claims to every property of the defendant, and his personal estate generally would be liable for their claims.

" The execution issued in this case is such as is named and intended in the 3d section of the act of 1872. It is against the employer for the collection of his own proper debt and must be regarded as denoting a condition of actual insolvency. Hartman's Ap., 107 Pa. 335. The amendments to the act of 1872 and the recent decisions of both our lower and higher courts go to show that too much strictness and detail have been exacted towards laborers in their endeavor to collect their claims for preferred wages, contrary to the intention and requirements of the statute and subversive of the rights of the classes named and intended to be protected. . . .

" Judge HANDLEY, in Bennett's Case, 7 Luz. Leg. Reg. 2, held that the only notice required to be given by the parties entitled to the benefit of the act of 1872 is a notice in the words of the act itself. It says simply that they shall before actual sale give notice of their claim and the amount thereof. The requirements of the notice in the case of Peiffer's Estate, 6 Luz. Leg. Reg. 101, are altogether too specific. The Supreme Court has, in Allison v. Johnson, 92 Pa. 316, fixed and determined upon four requisites of a notice, which ruling liberally applied has been followed in subsequent cases decided by said court, viz.: (1) It must be in writing and delivered to the officer in charge of the writ before the day of sale or before the avails leave his hands. (2) It must state the sum due and that the labor was performed within the time limited, six months of the date of levy, and the kind of services. (3) It must name in

and about a business defined in the statue. (4) It must set forth that the property levied upon is subject to lien for said services or claim.

" It is not material in what form these requisites appear. As we understand the decisions, and interpret the law, we hold the notices in this case to come within the rigors of the rule adopted by the Supreme Court of our state. (1) They are in writing and were delivered to the proper officer in the proper time. (2) They name the sum due and set forth that the labor was performed within six months immediately preceding the date of the levy. (3) They defined the kind, alleging that it was performed as a clerk and servant girl in and about the business of keeping a hotel in the place and on the premises where the goods and property were seized by the sheriff, and where it was being carried on by their employer, the defendant in the execution. (4) The amounts given are claimed as a lien upon all the goods and chattels taken in execution and from which the proceeds came. The judgment and writ of fieri facias are correctly and particularly referred to in the notices, and they contain all the information required. All the goods and chattels of the defendant and all that was seized by the sheriff in and upon the premises and about the hotel kept by him and which were used in conducting and carrying on the identical hotel named and described in the notices, were therein mentioned, and the sheriff and other parties interested could not be mistaken or misled in any particular in regard to the matter. As stated by counsel for the labor claimants, the first four lines of the notices contain the statement that ' all the goods, chattels,' etc., of the defendant are under levy by the writ referred to, and the fifth and sixth lines from the bottom of the first page aver that ' said property ' is designated as being subject to the lien claimed, directly connecting the property levied on and the lien which is claimed together, not only by inference but by direct averment, for if the levy is a complete one and embraces all the property of the defendant it must plainly, by its comprehensiveness, embrace the property on which the lien is claimed, on the simple principle that the whole is equal to the sum of all its parts. In brief, we believe that every requisite of a notice, in such cases, is set forth therein, ' with certainty to a reasonable intent,' and are forced to the conclusion that the learned audit-

or erred in disallowing the labor claims of David Griffiths and Ellen B. Weaver. These should have been allowed and paid out of the fund, before the landlord's claim of rent to William M. Weaver of $1,195.83."

*Errors assigned* were that the auditor and court erred (1) in distributing any part of the money in court to William M. Weaver for rent claimed to be due; (2) in not holding as a matter of law that Wm. M. Weaver, the landlord, was bound to proceed and distrain the personal property of Ellen B. Weaver, after notice by the plaintiff in the execution, which was on the premises and liable to distress, but could not be reached by the execution creditor; (3, 4) in awarding any part of the money in court to Ellen B. Weaver and David Griffiths; quoting the notice filed in each claim.

*S. B. Boyer* and *P. A. Mahan*, *J. W. Gillespie* with them, for appellant.—The same strictness as to notice should apply to rent as is required in wages claims: Adamson's Ap., 110 Pa. 459; Allison v. Johnson, 92 Pa. 314; Pardee's Ap., 100 Pa. 408.

The goods of Ellen B. Weaver should have been distrained upon by the landlord so as to leave all of defendant's property subject to plaintiff's execution.

The property of a stranger found on demised premises, left for no purpose of trade or other purpose requiring protection, as a matter of public policy, is liable for distress for rent: Kleber v. Ward, 88 Pa. 93; Blanche v. Bradford, 38 Pa. 344; Myers v. Esery, 134 Pa. 177.

Where one creditor has two funds out of which to make his money, and another creditor has but one, the former must first exhaust the fund upon which the latter has no claim, unless, in the particular instance, some equity renders the application of the rule unjust: Kendig v. Landis, 135 Pa. 612.

A wages notice should set forth such facts as make a case within the act, so that the officer and interested persons may know that the labor was done within the time limited, in a business defined in the act, the sum due, and that the property subject to the lien is embraced in the levy: McMillen v. First Nat. Bank of Corry, 1 W. N. 55; Adamson's Ap., 110 Pa. 459.

*William W. Ryon* and *J. Q. Adams,* for appellees.—The claim of the landlord is a preferred claim, and the fact that the money was ruled into court does not make his claim any the less a preferred claim upon the fund. The act is silent as to notice. The practice appears to be that a demand be made of the sheriff, or a rule upon the sheriff or other officer executing the writ and making the sale to pay the amount of rent due out of the proceeds. Then it becomes the duty of the officer to make inquiry, or some investigation, to satisfy himself before paying out the money, otherwise to pay it into court for distribution: Ege v. Ege, 5 Watts, 134.; West v. Sink, 2 Yeates, 274.

The goods of a tenant taken in execution upon the premises, are liable to the payment of rent to the landlord, up to the time they are taken in execution, though it be in the middle of a quarter: Binns v. Hudson, 5 Bin. 504 ; Case v. Davis, 15 Pa. 80.

The case of Kendig v. Landis, 135 Pa. 612, cited by counsel for appellant, was a case where two tracts of real estate of the defendant had been sold and two funds raised by the sale of the two tracts. One of the creditors had the two funds out of which to make his money and the other creditor had but the one.

A landlord cannot distrain goods for rent which have been previously levied upon on an execution or foreign attachment: Pierce v. Scott, 4 W. & S. 344.

When the tenant in the course of his business necessarily had the goods of those with whom he deals or who employ him, the goods are not liable to distress for rent due by the tenant: Karns v. McKinney, 74 Pa. 387 ; Riddle v Welden, 5 Whart. 9.

The execution was not stayed by the plaintiff, nor could it be after the notice of the landlord of his claim for rent, without his written consent: Act of June 16, 1836, § 85, P. L 777 ; Borlin v. Com., 110 Pa. 454.

Ellen B. Weaver was entitled to preference: Blackstone Pub. Co., Text-book Series, vol. 24, p. 81 ; Moyer's Ap., 112 Pa. 290 ; Ranninger's Ap., 118 Pa. 20 ; Schoch v. Garrett, 69 Pa. 144 ; Heidleberg v. Lynn, 5 Whart. 430 ; Swires v. Parsons, 5 W. & S. 357 ; Moreland Township v. Davidson Township, 71 Pa. 371 ; Roberts v. Kidd's Exr., 1 Yeates, 209 ; Amey's Ap., 49 Pa. 126 ; Snyder v. Castor's Admr., 4 Yeates, 358 ; Lukens v. Clayton, 4 Montg. Co. L. R. 177 ; Gardner's Admr.

v. Heiley, 49 Pa. 163 ; Thompson v. Stevens, 71 Pa. 162 ; Neal's Ex. v. Gilmore, 79 Pa. 421 ; Miller's Ap., 100 Pa. 568.

The goods and chattels upon which a lien is claimed must be embraced in the levy—i. e., must be included in and comprehended by the same. This is the doctrine held in each and every case cited by them occurring in their chronological order ; from 77 Pa. to 110 Pa. they are as follows : Sullivan's Ap., 77 Pa. 107 ; Allen's Ap., *81 Pa. 302 ; Allison v. Johnson, 92 Pa. 314 ; Pardee's Ap., 100 Pa. 408 ; Adamson's Ap., 110 Pa. 459.

*S. B. Boyer* and *P. A. Mahan, J. W. Gillespie* with them, for appellant, in reply.—Though the statute does not require it, notice of the landlord's claim for rent in arrears must be given to the officer charged with the execution of the writ. Without it, the sheriff will be required to pay the proceeds of the sale in execution to the plaintiff : Brown v. Jacquette, 8 W. N. 475 ; Ege v. Ege, 5 Watts, 134 ; Richie v. McCauley, 4 Pa. 471.

The notice of the execution creditor to the landlord was a sufficient release of his levy to enable the landlord to proceed and distrain the goods of Alice M. Metz and Ellen B. Weaver.

OPINION BY MR. JUSTICE THOMPSON, July 19, 1893 :

The fund arising from the sale under the execution in this case was claimed by the plaintiff in the writ, the landlord whose tenant defendant was, and by several persons who were employed by him. Defendant was engaged in the hotel business, and for the hotel paid rent at the rate of $125 per month, but had paid no rent from May 1, 1891. There was actually due at the time of the levy $1,168.88. The sale under the execution was completed February 24, 1892, and at the expiration of that month there would have been due to the landlord rent to the amount of $1,250. He gave notice that this sum was the amount of rent in arrear and due him. As the month had not expired this sum was $54.17 in excess of that actually due. His right to payment out of the fund to an amount not exceeding one year's rent is clearly fixed by the act of June 16, 1836, and the fact that by mistake or accident he gave notice of a small sum in excess of the amount then due should not destroy this right. The act requires no specific form of notice. It provides that

the goods and chattels shall be liable for the payment of any sum of money due at the time of taking such goods in execution, and makes it the duty of the officer to pay, out of the proceeds of the sale, the rent due, limiting the amount to one year's rent. As the landlord is entitled to be paid from the proceeds of the sale it is manifestly proper that he should give notice of his claim to the officer, but such notice is not necessarily required to contain every element of precision.

The appellant himself recognizes the sufficient accuracy of this notice of the landlord. In his notice to him he says, " You notified the said sheriff in writing that the said defendant was indebted to you in the sum of $1,250 for rent accrued and unpaid by said defendant as tenant under you within one year immediately preceding said levy." This knowledge of the extent, nature and character of the landlord's claim, as derived by the appellant himself from the landlord's notice, is a negation of his claim of its insufficiency. In this notice of appellant to the landlord he says, " that there was at and before the levy and still is upon the premises certain goods liable to distress, that they are claimed by certain persons, that unless he proceeds to distrain he will hold liable to the value, and that it shall be deducted from the amount claimed by him out of the proceeds of the sale." As the landlord disregarded this notice it was contended that the value of these goods should be deducted from his claim and the court below was guilty of error in not doing so. This notice was served twelve days after the sale and sufficient money had at that time been realized from it to pay the rent due. The landlord was entitled to be paid from such proceeds and was under no obligation to proceed to distrain because requested by appellant, the execution creditor. In his argument he admits that there is no case to be found which warrants this claim, and seeks refuge, however, in the analogy, where one creditor has two funds and another has one, the former is required to exhaust the one upon which the latter has no claim; but this analogy is not well founded when it is considered that, in this case, the one fund amply secured him, and there was no reason or necessity for seeking another. When the levy is made upon personal property and the sheriff has notice of a claim for rent, he has no right to stay the writ without the consent of the landlord, because his right to distrain is interfered with by the levy :

Borlin v. Commonwealth, 110 Pa. 454. With his rent thus secured and to be paid out of the proceeds of the sale, it would be anomalous to deprive him of it because he declined to do an unnecessary act at the request of an execution creditor. The position of the appellant has neither equity, authority, nor analogy to support it.

While this notice of the landlord was thus sufficient, such was also the case with those of the claimants for labor and services. They set forth that all the goods, chattels, rights and credits of the defendant were under execution, the nature of the labor and services to defendant in his business of hotel keeping, that the time when the same was done or rendered was within six months, that the amount of each was not in excess of $200, and that the respective amounts were liens upon the property levied upon, made so by the acts of assembly relating to wages. The act of 1872 made its provisions applicable to miners, mechanics, laborers, etc., while the act of 1883 amendatory of it, increased to a very large extent the class to be protected, and included clerks and servants about hotels. After providing that the money due for labor and services shall be preferred and first paid out of the proceeds, it is enacted that it shall be lawful for them before the sale to give to the officer executing the writ notice in writing of their claim or claims, and the amounts of the same. The limit of the period of work to be paid for is six months and the amount $200. The purpose of these acts is to protect from loss, in case financial disaster occurs to employers, a large class of persons whose dependence upon their earnings for their support and maintenance renders their loss even for a short period of time a matter of serious import. With the struggle for livelihood intensified by the progressive movements of civilized life, such legislation necessarily has its foundation in a humanity that would aid the weak, and consequently should not be restricted in its operation by requiring the highest degree of precision in the notice to be given to secure its benefits. These notices therefore should be such as would indicate to the officer and those interested the sum due before sale, the limit of time as to work done, the business defined by the acts, and the property subject to the lien: Allison v. Johnson, 92 Pa. 316 ; Adamson's Ap., 110 Pa. 462. As the notice in this case set forth a levy upon all the goods and

chattels of defendant, his business of hotel keeping, the character of the labor and services, the times when they were done or rendered, and their lien upon the property in execution under the acts of assembly, it is manifest that they are sufficiently particular, and contain all the requisites of proper notices.

The further objection to the claim of Ellen Weaver, based upon the ground that there is no evidence of contract, cannot be sustained. Both she and defendant Metz testified that a contract was made for her employment, that she was to be paid what her services were worth, and that they were worth $3.50 per week. The auditor finds that she was employed by defendant, and that her services were worth that amount per week. The act of assembly in its provision making the preference provides "that all moneys that may be due or may hereafter become due for labor or services rendered (by persons named), whether at so much per diem or otherwise," clearly was intended to reach all classes of employment. In this case, the claimant was employed under an express promise to pay, and having performed her work and earned her wages she is entitled to have them paid out of the fund. Moyer's Ap., 112 Pa. 290; Ranninger's Ap., 118 Pa. 20.

As the assignments of error are not sustained, the decree of the court below is affirmed, and this appeal is dismissed at the cost of the appellant.